IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **J.E.B.**, individually and as next friend to **F.C.B.**, | § § § | |
| Plaintiff(s), | § § | |
| VS. | § § | |
| **CLAY DEAN HILL**, individually and d/b/a **SHILOH TREATMENT CENTER, SHILOH TREATMENT CENTER, INC.; JUAN J. SANCHEZ**, individually and d/b/a, **SOUTHWEST KEY; AND SOUTHWEST KEY PROGRAMS, INC.**, | § § § § § § § § § § § | CIVIL ACTION NO. 1:19-CV-444-LY |
| Defendant(s). | | |

**DEFENDANTS JUAN J. SANCHEZ AND SOUTHWEST KEY PROGRAMS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs' Original Petition reveals that this case involves their dispute with federal immigration laws (*e.g.*, detention of asylum seekers and family separation policy) and incidents that allegedly occurred while F.C.B. was placed in a facility operated by co-defendants Clay Dean Hill and Shiloh Treatment Center. As pled, it is not about any improper conduct or action taken by Defendants Juan J. Sanchez ("Sanchez") or Southwest Key Programs, Inc. ("SWK") (collectively, the "SWK Defendants"). Therefore, SWK Defendants, by and through their counsel and pursuant to Fed. R. Civ. P. 12(c), respectfully move to dismiss all claims Plaintiffs assert against SWK Defendants in their entirety based on the pleadings. As grounds for this motion, the SWK Defendants state and offer the following:

**I.    INTRODUCTION**

Plaintiffs are father and son residents and citizens of Guatemala. (Pls.' Pet. ¶ 3.) Plaintiffs allege that in February of 2018, law enforcement authorities apprehended and took them into

custody while they were traveling to the United States in search of asylum. (*Id.* at ¶¶ 14-15.) After their apprehension, Plaintiffs allege they were separated by law enforcement authorities and placed in separate facilities. (*Id.* at ¶ 15.) After a relatively short period of detention, J.E.B., the father, was allegedly deported to Guatemala. (*Id*. at ¶¶ 23-24.) His son F.C.B., however, was detained for a longer period of time, initially placed by law enforcement authorities at a facility operated by SWK Defendants while waiting for final adjudication of his immigration status. (*Id.* at ¶¶ 23-24.) F.C.B. was placed in the SWK facility from February to June of 2018. (*Id.* at ¶¶ 24-25.)

On June 21, 2018, F.C.B. was transferred to a facility that was operated by Co-Defendants Clay Dean Hill and the Shiloh Treatment Center ("Shiloh"). (*Id*. ¶ 25.) While at Shiloh, Plaintiffs contend F.C.B. was misdiagnosed, improperly treated with medication, and sexually assaulted by another child. (*Id*. at ¶¶ 16-19, 25-35.) Based on this alleged mistreatment, Plaintiffs now seek damages pursuant to the common-law intentional torts of assault and battery, false imprisonment, and intentional infliction of emotional distress. (*Id.* at ¶¶ 37-39.)

SWK Defendants dispute liability for each of Plaintiffs' claims. As pled, moreover, all of Plaintiffs' claims are facially inadequate and should be dismissed, granting SWK Defendants judgment on the pleadings. In particular, Plaintiffs do not contend that any of the alleged physical or sexual abuse occurred at the SWK Defendants' facility or that any of these tortious acts were committed by the SWK Defendants. Moreover, as discussed in more detail below, although Plaintiffs assert a false imprisonment claim, they fail to allege facts supporting an essential element of the claim – that the detention was unlawful and not within the scope of their pursuit of asylum in the United States.

Plaintiffs' entire Petition consists of conclusory allegations that fail to articulate sufficient facts that specifically support any claims against the SWK Defendants. Consequently, since

Plaintiffs' claims for relief against them are not well-pled and the alleged facts fail to support those claims, the Court should grant SWK Defendants judgment on the pleadings and dismiss all claims against them in their entirety under Fed. R. Civ. P. 12(c).

## II.    ARGUMENTS AND AUTHORITIES

### A. Standard of Review

After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are subject to the same standard of review as Rule 12(b)(6) motions. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002). That is, the Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiffs, to determine whether the pleadings allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 556. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not '*show[n]*'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. (*quoting* Fed. R. Civ. P. 8(a)(2)) (emphasis added).

If a plaintiff "ha[s] not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. A court is authorized to dismiss a claim if it appears, beyond doubt, that a plaintiff can prove no set of facts to support his claim that would entitle him to relief. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983); *F.D.I.C. v. Nathan*, 804 F. Supp. 888, 891 (S.D. Tex. 1992). The court is not required to 'conjure up unpled allegations or

construe elaborately arcane scripts to' save a complaint. *See Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006). Dismissal is also proper when a complaint "lacks an allegation regarding a required element necessary to obtain relief." *Id.*

### B. Plaintiffs Fail to Plead Viable Intentional Tort Claims Against Defendants
#### 1. Assault and Battery

Plaintiffs' first claim for relief is for the intentional torts of assault and battery. (Pls.' Pet. ¶ 37.) The elements of a civil assault require showing a person (1) intentionally, knowingly, or recklessly caused bodily injury to another; (2) intentionally or knowingly threatened another with imminent bodily injury; or (3) intentionally or knowingly caused physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *See City of Waco v. Williams*, 209 S.W.3d 216, 223 (Tex. App.—Waco 2006). Likewise, a battery is established when a person (1) acts intending to cause a harmful or offensive contact with the person of the other and (2) a harmful contact with the person of the other directly or indirectly results. *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 556 (S.D. Tex. 2016). As pled, Plaintiffs fail to establish any of the elements for assault or battery against the SWK Defendants.

According to Plaintiffs' well-pleaded facts, law enforcement authorities placed F.C.B. in Arizona at a facility operated by SWK Defendants for approximately four months, from February of 2018 until June of 2018. (Pls.' Pet. ¶¶ 16, 23-25.) During this time, Plaintiffs only allege that F.C.B. was diagnosed with "Adjustment Disorder" – presumably by the SWK Defendants – before he was transferred to a smaller facility operated by other parties, on June 21, 2018. (*Id.* at ¶¶ 24-26.) Critically, Plaintiffs do not allege that any physical or sexual abuse occurred at the SWK facility or by any SWK Defendants. In fact, as pled, it was not until after F.C.B. was transferred to the Shiloh facility in Texas that any alleged tortious conduct occurred. (*Id.* at ¶¶ 16-19, 26-36.)

Thus, even when viewed in a light most favorable to Plaintiffs, before the June 21, 2018 transfer, there is no claim that F.C.B was improperly medicated, sexually assaulted or otherwise harmed at the SWK facility. (*Compare id.* ¶ 24, *with id.* at ¶¶ 16-19, 26-36.)

Of particular importance here, in an assault and battery case, if the defendant establishes a lack of physical contact, then he/she successfully eliminates an essential element of the cause of action. *Preble v. Young,* 99 S.W.2d 153, 156 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (noting actual touching is a necessary element to assault and battery claims); *see also Protho v. City of Garland*, 234 F.3d 706 (5th Cir. 2000) (holding that district court erred when it denied qualified immunity to three police officers for whom plaintiff never alleged "inappropriate physical contact occurred"). Even broadly construing all facts pled in the Petition, Plaintiffs have not plausibly alleged any harmful or offensive bodily contact by the SWK Defendants. Further, even if taken as true, Plaintiffs' allegations on their face do not indicate that F.C.B. had an apprehension of or experienced any tortious contact at any time during his detention at the SWK facility.

### 2. False Imprisonment

Plaintiffs also assert an intentional tort claim for false imprisonment. (Pls.' Pet. ¶ 38.) False imprisonment in Texas is the direct restraint by one person of the physical liberty of another without adequate legal justification. *Big Town Nursing Home, Inc. v. Newman*, 461 S.W.2d 195 (Tex.Civ.App.—Waco 1970, no writ). The essential elements of false imprisonment are: (1) willful detention by the defendant; (2) without the consent of the plaintiff; and (3) without authority of law. *See Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). As pled, Plaintiffs fail to allege a plausible false imprisonment claim against the SWK Defendants because they do not articulate any facts that suggest that F.C.B's detention at the SWK facility was executed "without the authority of law." Plaintiffs' allegations, indeed, reveal precisely the contrary.

To be clear, Plaintiffs do not contend that they are citizens or residents of the United States. (Pls.' Pet. ¶ 3.) Rather, Plaintiffs are citizens of Guatemala who were apprehended and taken into custody by federal law enforcement officials while they were traveling to the United States in search of asylum. (Pls.' Pet. at ¶¶ 3, 15.) Importantly, "an officer acting with the authority of law does not commit false imprisonment." *Davila v. United States,* 713 F. 3d 248, 262 (5th Cir. 2013); s*ee also Wal–Mart Stores v. Resendez*, 962 S.W. 2d 539, 540 (Tex. 1998) ("In a false imprisonment case, if the alleged detention was performed with the authority of law, then no false imprisonment occurred"). Here, Plaintiffs' well-pleaded facts establish that their detention was directly connected with their attempt to apply for asylum. (Pls.' Pet. at ¶¶ 14-15.) Thus, by its very nature, at the time of their apprehension, Plaintiffs lacked legal immigration status in the United States and, therefore, were fully subject to the federal immigration laws, regulations, and procedure for all similarly situated asylum applicants.

Under Section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a), federal law enforcement officials have the sole discretion to grant asylum to any alien who is unable or unwilling to return to his or her country of origin because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A). Further, and critically, federal law enforcement officials also have the statutory and regulatory authority to detain any individual that arrives in the United States to seek asylum, while that person awaits the final adjudication of his or her immigration status. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien ... shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed"). *See also Jennings v. Rodriguez,* 138 S. Ct. 830, 842 (2018) (Alito, J.) (holding, *inter alia*, that the plain language within § 1225(b) regarding aliens seeking asylum mandates the

detention of those individuals until immigration officers have finished "consider[ing]" the application for asylum or until removal proceedings have concluded). And F.C.B. remained in federal custody by reason of his immigration status at all times during his 4-month placement in SWK's facility. *See* 6 U.S.C. § 279(b).

At its core, Plaintiffs' false imprisonment claim does not allege anything more than what is authorized under federal law for all asylum applicants. At no point in the Petition do Plaintiffs offer any facts suggesting that F.C.B.'s placement at the SWK facility was an extrajudicial detention. Without more, Plaintiffs' Petition simply does not state a plausible false imprisonment claim against the SWK Defendants. *Twombly*, 550 U.S. at 556. To the extent Plaintiffs seek to express displeasure with the manner their asylum claim was handled or, more broadly, challenge U.S. federal immigration policy or the current administration's family separation policy, a false imprisonment claim against the SWK Defendants is wholly inappropriate, not viable, and should be dismissed. After all, while placed in the SWK facility, F.C.B. remained in the lawful custody of federal law enforcement authorities.

### 3. Intentional Infliction of Emotional Distress

Finally, Plaintiffs also assert a vague claim for Intentional Infliction of Emotional Distress ("IIED"). (Pls.' Pet. ¶ 39.) To prevail on a claim for IIED, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004); *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62 (Tex. 1998). Plaintiffs' factual allegations, however, fail at every step.

In Texas, moreover, IIED claims are recognized as a "gap-filler" tort that was "never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc.*

*v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). Accordingly, since IIED is a gap-filler tort, a plaintiff must not only establish the essential elements set forth above, but "must also establish that there are no alternative causes of action that would provide a remedy for the severe emotional distress caused by the defendant's conduct." *Kroger Tex., L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). If an IIED claim is based on another tort, a plaintiff cannot maintain an action for IIED "regardless of whether he/she chooses to assert the alternative claim, succeeds on the alternative claim, or the alternative claim is barred." *Tipping v. Martin*, No. 3:15-CV-2951-BN, 2015 WL 5999666, at *7 (N.D. Tex. Oct. 14, 2015) (*citing Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex.2004)). Thus, where the gravamen of an IIED claim is really another tort, IIED should not be available since the availability of the other claims leaves no gap to fill. *Hoffmann–La Roche Inc.,* 144 S.W.3d at 447; s*ee also Moser v. Roberts*, 185 S.W.3d 912, 915–16 (Tex. App. 2006) (dismissing an IIED cause of action because plaintiff's slander, libel, and malicious prosecution claims afforded plaintiff a remedy for any resulting emotional distress); *Bookman v. AIDS Arms, Inc.*, No. 3:14-CV-814-B, 2014 WL 4968189, at *6 (N.D. Tex. Oct. 3, 2014) ("in light of the fact that the IIED claim is based on the same allegations as those offered in support of the sexual harassment claim, the Court finds the IIED claim invalid"); *Holguin v. Lopez*, 584 F. Supp. 2d 921, 928 (W.D. Tex. 2008) ("Because [plaintiff's] IIED claim against [defendant] is based on the same operative facts as his claims for constitutional violations, the Court finds that [plaintiff] cannot pursue his IIED claim as a matter of law).

      Here, because Plaintiffs' IIED claim is solely based on the same conduct alleged and offered in support of the assault and battery and false imprisonment claims, it will not fill any gaps. Further, even when viewed in a light most favorable to Plaintiffs, SWK Defendants' conduct, as described in the Petition, falls well short of "extreme and outrageous" behavior. According to

Plaintiffs, F.C.B. was placed in the SWK facility from February to June 2018. (Pls.' Pet. at ¶¶ 24-25.) During this time, Plaintiffs allege that F.C.B. was diagnosed with "Adjustment Disorder," but allege no other conduct by the SWK Defendants. (*Id.* at ¶¶ 24-26.) Nor do they allege any facts relating to purportedly intentional or reckless conduct, resulting emotional distress or that such hypothetical emotional distress was severe. This court is not required to conjure up any additional unpled allegations. *See Rios,* 444 F.3d at 421. Plaintiffs' Petition does not allege any extreme or outrageous behavior during F.C.B's four-month placement at the SWK facility. *Cf. 'Umar v. Price*, No. 09-95-068CV, 1996 WL 4031, at *6 (Tex. App. Jan. 4, 1996) (finding Plaintiff did not allege sufficient facts rising to the level of injury for which IIED existed even where plaintiff was incarcerated in a penal institution). Plaintiffs have failed to plead facts that support the essential elements of an IIED claim and fail to demonstrate that such a claim would fill a gap in the law.

### C. Plaintiffs Fail to Plead a Plausible Claim Against Sanchez

#### 1. Plaintiffs do not allege that Sanchez engaged in any tortious conduct

Plaintiffs' ostensible claims against Sanchez in his individual capacity fail on the pleadings. Other than identifying Sanchez as the Chief Executive Officer of SWK and making assertions about his financial arrangement with SWK, Plaintiffs do not plead any facts even remotely demonstrating a plausible claim that Sanchez committed any of the alleged intentional torts. Plaintiffs do not, for example, allege that Sanchez had any role or involvement in the apprehension or placement of F.C.B. at the SWK facility. Nor do they allege that, while at the SWK facility, Sanchez monitored, counseled, treated, or had any contact with F.C.B. at any time. Plaintiffs do not plead any facts supporting any claim against Sanchez individually.

#### 2. Sanchez is entitled to qualified immunity for all claims asserted against him in his individual capacity

In the alternative, the Court should find that Sanchez is entitled to qualified immunity for all claims asserted against him in his individual capacity. According to Plaintiffs' Petition, SWK

is a non-profit Texas corporation with business operations focused on holding foreign minors who have been detained and separated from their parents by governmental entities. (Pls.' Pet. at ¶¶ 7-8.) That is, it is a facility in which federal authorities place alien minors while they are in federal custody by reason of their immigration status. *See, e.g.*, 6 U.S.C. § 279(b). From 1987 until March of 2019, Sanchez was the CEO of SWK. (Pls.' Pet. ¶ 7.) As such, according to Plaintiffs' allegations, Sanchez was an agent of the federal government, with regard to the placement of detained minors at the SWK facility, triggering his entitlement to qualified immunity.

As the Fifth Circuit has explained, "[q]ualified immunity serves to ensure government employees are not impeded from their public work to defend frivolous actions." *Porter v. Valdez*, 424 Fed. Appx. 382, 386 (5th Cir. 2011) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). *See also Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (holding Courts should resolve qualified immunity at the earliest possible stage of litigation and it should protect "all but the plainly incompetent or those who knowingly violate the law). Through qualified immunity, government officials conducting discretionary functions generally are shielded from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Accordingly, qualified-immunity analysis is based upon two, well-established prongs: (1) whether plaintiffs show violation of a clearly-established statutory or constitutional right; and, if so, (2) whether they show defendants' actions were 'objectively [un]reasonable in light of clearly established law.'" *Id*. (*quoting Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003)).

Once the qualified immunity affirmative defense is invoked, the burden shifts to the Plaintiff to rebut it. *See Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994). The plaintiff must plead specific facts with a level of particularity so that they would, if proved, warrant the

relief sought. *Id*.; *See also Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003) (*citing Reyez v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) ("[h]eightened pleading in qualified immunity cases requires that plaintiffs rest their complaint on more than conclusions alone and plead their case with precision and factual specificity"). In view of that, because Sanchez raises qualified immunity in the context of a Rule 12(c) motion, the Court's analysis is limited to the facts alleged in Plaintiffs' Original Petition. *See Nunez* 341 F.3d at 386-87.

Plaintiffs' well-pleaded facts do not show a violation of any clearly-established constitutional or statutory right or any action by Sanchez that was objectively unreasonable in light of clearly established law. First, although Plaintiffs allege false imprisonment, they concede that F.C.B. was only placed at the SWK facility after Plaintiffs were apprehended and taken into custody by law enforcement officials while traveling from Guatemala to the United States in search of asylum. (Pls.' Pet. at ¶¶ 14-15.) Thus, on its face, Plaintiffs' conclusory allegations do not suggest that Sanchez violated any clearly-established right by ostensibly participating in F.C.B.'s detention while he awaited the final adjudication of his immigration status.

Second, even if the Court were to proceed to the second step, Plaintiffs do not allege any facts that demonstrate any objectively unreasonable conduct by Sanchez. To succeed on this prong, Plaintiffs must allege facts sufficient to show that no reasonable officer could have viewed his actions as proper. *Porter*, 424 Fed. Appx. at 388. However, as noted above, Plaintiffs fail to allege any facts that demonstrate that Sanchez, as the CEO of SWK, personally committed any specific acts while F.C.B. was placed at the SWK facility.

Consequently, Plaintiffs' claims against Sanchez necessarily fail because they do not allege specific conduct that gives rise to a constitutional or statutory violation or objectively unreasonable conduct under any clearly established law. *See DeLeon v. City of Dallas*, 141 Fed. Appx. 258, 261

(5th Cir. 2005). Failing on each element, Plaintiffs cannot state a plausible claim against Sanchez to which he is not otherwise entitled to qualified immunity.

### D. Plaintiff J.E.B. Fails to Plead Any Claims Against Defendants in his Individual Capacity.

Finally, SWK Defendants are entitled to judgment on the pleadings with respect to any claims for relief asserted by Plaintiff J.E.B. in his individual capacity because the Petition does not contain any supporting factual or legal grounds. Each of the asserted claims – assault and battery, false imprisonment, and intentional infliction of emotional distress – relate to the alleged detention and treatment of F.C.B. (Pls.' Pet. ¶¶ 37-39.) According to the Petition, J.E.B. was taken into custody and deported to Guatemala in April of 2018. (*Id.* at ¶¶ 15, 23.) No well-pleaded facts suggest any purported mistreatment of J.E.B. by SWK Defendants. Plaintiffs do not allege that SWK Defendants were involved in J.E.B.'s apprehension, his separation from F.C.B., his detention or his eventual deportation to Guatemala. He does not allege that he was ever detained at the SWK facility or that he had any physical contact with any SWK employee prior to his deportation. Even construing the facts in Plaintiffs' Original Petition broadly and accepting them as true for the purposes of the instant motion, nothing supports any claim by J.E.B. against SWK Defendants.

### III.   CONCLUSION AND PRAYER

For the reasons stated herein, SWK Defendants request that the Court grant judgment on the pleadings in favor of Defendants Juan J. Sanchez and Southwest Key Programs, Inc. and against the Plaintiffs as to all claims asserted by all Plaintiffs in the Original Petition, dismissing all such claims with prejudice.

       Respectfully submitted,

       **TAYLOR|ANDERSON, LLP**


**BY:**  <u>*/s/ Floyd R. Hartley, Jr.*</u>
       **Floyd R. Hartley, Jr.**
       State Bar No.: 0798242
       fhartley@talawfirm.com

       1670 Broadway, Suite 900
       Denver, Colorado 80202
       TEL: (303) 551-6660
       FAX: (303) 551-6655

       ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

On the 12th day of July, 2019, I electronically submitted the foregoing document with the Clerk of Court for the United States District Court, Western District of Texas, using the Electronic Filing System of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*VIA E-SERVICE & EMAIL:*
John Judge
Judge, Kostura & Putman, P.C.
2901 Bee Cave Road, Box L
Austin, Texas 78746
jjudge@jkplaw.com

*Attorney for Plaintiffs*

*VIA E-SERVICE & EMAIL:*
Ricardo de Anda
De Anda Law Frim, P.C.
212 Flores Avenue
Laredo, Texas 78040
deandalaw@gmail.com

*Attorney for Plaintiffs*

*VIA E-SERVICE & EMAIL:*
Jay Harvey
Winckler & Harvey, LLP
4407 Bee Cave Road, Building 2, Suite 222
Austin, Texas 78746
jharvey@wincklerharvey.com

*Attorney for Plaintiff*

*VIA E-SERVICE & EMAIL:*
Wesson H. Tribble
6371 Richmond Ave
Houston, TX 77057
wtribble@tribblelawfirm.com

*Attorney for Shiloh Treatment Center, Inc.*

*VIA E-SERVICE & EMAIL:*
Wes Griggs
Law Office of Wes Griggs
301 South 17th Street
P.O. Box 517
West Columbia, Texas 77486
service@wesgriggslaw.com

*Attorney for Clay Dean Hill*

                                        */s/ Floyd R. Hartley, Jr.*
                                        **Floyd R. Hartley, Jr.**