UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **J.E.B.**, individually and as next friend to **F. C. B.**, Plaintiff, <br><br> VS. <br><br> **CLAY DEAN HILL, OWNER OF SHILOH TREATMENT CENTER,** d/b/a **SHILOH TREATMENT CENTER, SHILOH TREATMENT CENTER, INC.; JUAN J. SANCHEZ, FORMER CEO AND CONTROLLING INDIVIDUAL IN THE SWK ENTITIES; SOUTHWEST KEY PROGRAMS, INC,** d/b/a **SOUTHWEST KEY** Defendants. | § § § § § § § § § § § § § § § § § CIVIL NO.: 1:19-CV-444-LY |

# PLAINTIFF'S FIRST AMENDED COMPLAINT & JURY DEMAND

To the Honorable Court:  Pursuant to Order of the Court dated July 30, 2019 [Dct. 15] **J. E. B.**, individually and as next friend to **F. C. B.**, his son, a minor child, files his First Amended Complaint & Jury Demand, complaining of **CLAY DEAN HILL**, individually and d/b/a **SHILOH TREATMENT CENTER, SHILOH TREATMENT CENTER, INC.** (collectively "**SHILOH**" herein); **JUAN J. SANCHEZ,** individually and d/b/a, **SOUTHWEST KEY;** and **SOUTHWEST KEY PROGRAMS, INC.;** (collectively "**SWK**" herein).

## A.  NATURE OF ACTION

1. This is an action for damages brought by **J. E. B.**, individually and as next friend to **F. C. B.**, his 10-year old son who was forcibly separated from his father and

incarcerated in a foreign land without the due process of law, in violation of his rights guaranteed under the Constitution of the United States to the due process and equal protection of the law, under inhumane, cruel, and outrageous circumstances.

## B. PARTIES

2. **J. E. B.** and **F. C. B.** are residents and citizens of the Republic of Guatemala. Both are of Hispanic and indigenous Mayan ancestry.

3. **CLAY DEAN HILL** is the owner and operator of **SHILOH TREATMENT CENTER**, located in Brazoria County, Texas. He has been served with the process of the court and has appeared generally herein. He is sued in his individual and representative capacities. He has consented to removal of this case to this Court.

4. **SHILOH TREATMENT CENTER, INC.** is a for-profit corporation organized and existing under the law of the State of Texas. It has been served with the process of the court and has appeared generally herein. It has consented to removal of this case to this Court.

5. Defendant **Clay Dean Hill** and **SHILOH TREATMENT CENTER, INC.** are referred to collectively in this complaint as "**Shiloh**."

6. **JUAN J. SANCHEZ** was, from 1987 until March 2019, the Chief Executive Officer of and controlling individual in the **SWK** entities. He is reported to have amassed annual income in excess of $1.5 million from the business enterprises he formed, organized, owned, and directed in the incarceration of innocent children after they have been separated from their parents by government officials. He is sued in his individual and representative capacities. He has been served with the process of the court and has appeared generally herein. He has, along with his codefendant, SOUTHWEST KEY

PROGRAMS, INC. removed this case from the Travis County, Texas District Court to this court.

7. **Southwest Key Programs, Inc.,** d/b/a **SOUTHWEST KEY, a/k/a Southwest Key Sol** is a non-profit corporation organized and existing under the law of the State of Texas. Its business operations are focused on the compulsory incarceration of children from foreign countries who have been brought to the United States and separated from their parents by agents of various governmental entities. It is affiliated with many lucrative and profitable business entities owned and controlled by **JUAN J. SANCHEZ** that earn great profits from servicing **SWK**'s child-incarceration business. A substantial portion of the profits of the affiliated entities have been kicked-back to **SWK**'s Chief Executive Officer, Defendant **JUAN J. SANCHEZ**. In early 2019 the totality of the enterprise was reported to have in excess of 8,000 employees engaged in its business built on family separations, kidnapping, assaults, batteries, false imprisonments, outrageous and atrocious conduct, and deprivation of constitutional rights. It has been served with the process of the court and has appeared generally herein. It has, along with its codefendant, **JUAN J. SANCHEZ** removed this case from the Travis County, Texas District Court to this court.

8. Defendants **JUAN J. SANCHEZ** and **SOUTHWEST KEY PROGRAMS, INC**. are referred to collectively in this complaint as "**SWK**."

C. **JURISDICTION & VENUE**

9. This Court has jurisdiction of this case pursuant to its federal question jurisdiction found at 28 USC, §1331.

10. Venue is proper in the Western District of Texas pursuant to the provision of 28 USC, §1391 (b) (1) because Defendant **JUAN J. SANCHEZ** is a resident of, and

Defendant **SOUTHWEST KEY PROGRAMS, INC**.'s principal business office is located in the Western District of Texas.

11. All conditions precedent to this action have occurred or have been performed.

12. The **SWK** defendants have asserted an affirmative defense that Plaintiff's damages were the sole result of **SWK**'s faithful execution of federal immigration law and policy. They also claim immunity from Plaintiff's claims.

13. Plaintiff would show the Court that, as a matter of law, there is not now, never has been, and never will be immunity from liability resulting from a defendant's violation of rights guaranteed by the Constitution of the United States.

### D. PLAINTIFF'S FACTUAL ALLEGATIONS

14. On or about January 24, 2018 **J. E. B.** and **F. C. B.,** father and then 9-year old son, left their home in the Mayan highlands of Guatemala and began traveling to the United States in search of asylum, due to extortionate threats on their lives, and in search of a better life for themselves and other family members.

15. In early February 2018 **J. E. B.** and **F. C. B.** were apprehended by law enforcement authorities and taken into custody. Father and son were forcibly separated against their will. **J. E. B.** was deported to Guatemala without a legitimate credible fear hearing or any other process of the law due to him, and without his son.

16. **F.C.B.** was held, first in the State of Arizona by the **SWK** defendants. He was abused both physically and emotionally. The abuse was so extreme and outrageous that on or about June 9, 2018, he was admitted to the Banner Thunderbird Medical Center at Glendale Arizona at risk of suicide.

17. On or about June 21, 2018 he was transported and admitted to **SHILOH TREATMENT CENTER, INC**, against his will, and without parental consent. He was dosed with powerful psychotropic drugs without parental consent and without legitimate consent from any legally competent *in loco parentis*.

18. **F.C.B**. was diagnosed by **SHILOH'S** medical staff using diagnostic criteria of the DSM IV, when DSM V was the appropriate guidance. He was misdiagnosed under either criterion. **SHILOH'S** diagnosis, Rule Out General Anxiety Disorder, was wrong. The correct diagnoses should have been Acute Stress Disorder, Post Traumatic Stress Disorder, or Ongoing Stress Disorder.

19. While at Shiloh, **F.C.B.** was dosed with Lexapro, a powerful psychotropic drug. In legitimate medical practice, Lexapro is never prescribed in any amount for children under 10 years of age. **F.C.B.** celebrated his 10th birth in early December 2018, while incarcerated at Shiloh. He had been dosed with Lexapro for many months prior to his 10th birthday.

20. He was also dosed with Risperdal, which is used to treat serious mental/mood disorders such as schizophrenia, bipolar disorder, and irritability associated with autistic disorder at 0.25 mg. per dose. **F.C.B.** was never competently diagnosed with any of the conditions for which the powerful psychotropic drugs are legitimately prescribed.

21. On July 24, 2018 the Risperdal was discontinued because **F.C.B**. was showing no signs of psychosis. Nevertheless, the Lexapro dosage was doubled from 5mg. to 10 mg.

22. From a July 3, 2018 date of measurement, **F.C.B.** demonstrated 8 incidents of depressive symptoms, 36 incidents of mood instability, 15 incidents of non-compliance, and 66 incidents of anxiety. During the same time frame there were zero incidents of physical aggression, suicidal ideation, and self-injurious behavior.

23. In a series of review documents dated July 19, 2018, **SHILOH** staff purported to observe behavioral symptoms during the period, July 10 – August 8, 2018. **F.C.B.** demonstrated zero incidents of physical aggression, physical aggression threats, and property destruction. During the same time frame, he had zero incidents of suicidal ideation, suicidal threats, and suicidal attempts. He had zero incidents of self-injurious behavior.

24. During the same July 10 – August 8, 2018 time frame and starting with a baseline of 8 incidents of depressive symptoms, **F.C.B.** had zero incidents of depressed affect, withdrawal, agitation, irritability, crying, poor appetite, or excessive sleep. Mood instability, as demonstrated through hyper talkative behavior was observed 70 times from a baseline of 28 in the same time frame. Otherwise there were zero incidents of mood swings, depressed affect, withdrawal, agitation, irritability, crying, poor appetite, increased appetite, and excessive sleep. From a baseline of zero, there were 2 incidents of screaming/yelling, and zero incidents of temper outbursts, verbal aggression, verbal threats, and disruptive behavior. There were zero incidents of verbal aggression, verbal threats, profanity, and screaming/yelling.

25. Defiant oppositional non-compliance was observed during the same July 10 – August 8, 2018 time frame as follows:

       a. Defiant behavior:  Baseline, 0; observed incidents, 0;
       b. Refusing to Work:  Baseline, 0; observed incidents, 1;
       c. Non-compliant behavior:  Baseline, 0; observed incidents, 3;

      d. Leaving assigned area:   Baseline, 8; observed incidents, 6;
      e. Argumentative behavior:  Baseline, 1; observed incidents, 9;
      f. Oppositional behavior:  Baseline, 0; observed incidents, 0;
      g. Slow to comply:  Baseline, 6; observed incidents, 19;
      h. Task avoidance:  Baseline, 0; observed incidents, 0; and
      i. Off task behavior:  Baseline, 0; observed incidents, 1.

26. Except for hyper-talkative behavior, anxiety symptoms diminished considerably during this time frame. There were zero incidents of anxiety and pacing from baselines of 14 and 15, respectively. There were two incidents of obsessive behavior from a baseline of 13. There were, however, 70 incidents of hyper talkative behavior from a baseline of 24.

27. By August 15, 2018 the Lexapro dosage had again been doubled to 20mg by mouth at bedtime.

28. On August 16 or 17, 2018, **F.C.B.** became upset about video games and began picking a hole in the wall. He wrapped a blanket around his head and neck and became physically aggressive when a staff member attempted to remove it. He was subdued with a cradle assist hold that lasted approximately 2 minutes. He verbalized his desire to go home with this father and grandmother. No psychiatric services or counseling services were provided during this time frame.

29. On September 4, 2018 Benadryl, 25 mg by mouth was added to **F.C.B.**'s medication regime to help him sleep. Nevertheless, the record reports no medical services were rendered during this period.

30. According to a statement made by a Shiloh representative, Brenda Banda, to his counsel, **F.C.B.** was sexually assaulted by another child inmate during the last few weeks of his incarceration at Shiloh. Shortly after the sexual assault, he was deported, without the process and equal protection of law due to one in his circumstances, to the

Republic of Guatemala, in violation of his rights guaranteed to him by the 5th and 14th Amendments to the Constitution of the United States.

31.     SWK has affirmatively alleged, and all defendants were, in fact, acting as agents of the government at all times material to this case.  All Defendants were, at all times, acting under color of law.  They were, as a consequence, subject to the constitutional constraints made the basis of Plaintiff's constitutional claims.

32.     Based on information and belief, **SWK** and **SHILOH** were paid between $700.00 and $1,200.00 per day for their services rendered incarcerating **F.C.B**.  He was viewed as an asset to SWK, Shiloh, and their owners.  Despite his repeated requests to go home with his father and grandmother, there was no serious consideration of discharge.

33.     After his manifestation of suicidal ideation at the SWK facility, he was no longer viewed as an asset by the SWK ownership.  SWK got rid of him as fast as they could.  He was removed to an Arizona medical center and transported from there directly to Shiloh in Texas.  SWK never sought the return of this heretofore valuable human asset.

34.     After the sexual assault at Shiloh was reported he was again viewed as a potential liability, and quickly deported on or about December 14, 2018.

35.     As a result of Defendants' conduct alleged herein, Plaintiffs, both father and son, have suffered, and will continue to suffer physical pain, mental anguish, emotional distress, injury to earning capacity, and have incurred medical expenses.

### E.  LEGAL PRINCIPLES (CAUSES OF ACTION)

36.     **Assault and Battery**.  At all times material hereto, **Shiloh** and **SWK** acted intentionally, knowingly, or recklessly.  On more than one occasion these defendants, acting individually or through agents, servants, and employees, or persons otherwise subject to their control, threatened to and actually contacted Plaintiff's person.

The contact was offensive and caused physical and emotional harm.  Plaintiff makes common law and constitutional claims for assault and battery against both **Shiloh** and **SWK**.

37. **False Imprisonment**.  Both **Shiloh** and **SWK** willfully detained **F.C.B.**  The detention was without Plaintiff's consent.  The detention was without constitutionally compliant legal authority or justification.  The detention was a direct and proximate cause of damage.  Plaintiff makes common law and constitutional claims for false imprisonment against both **Shiloh** and **SWK**.

38. **Intentional Infliction of Emotional Distress**.  Both plaintiff father and his son are natural persons.  Defendants acted intentionally or recklessly against Plaintiff, both father and son.  As a result of such intentional or reckless conduct Plaintiff, both father and son, suffered severe emotional distress.  The Defendants' conduct was extreme and outrageous.  The Defendants' intentional or reckless conduct was a proximate cause of Plaintiff's severe emotional distress.  Plaintiff makes common law and constitutional claims for the intentional infliction of emotional distress against both **Shiloh** and **SWK**.

39. **Deprivation of Constitutional Rights**.  At all times material hereto, all defendants were acting under color of law.  By through and because of their actions alleged in this complaint Defendants deprived **F.C.B.** of his rights to the due process and equal protection of the law, as guaranteed to him under the 5th and 14th Amendments to the Constitution of the United States.

40. **F.C.B.** was deported to his homeland in Guatemala, from whence he and his father had fled in fear for their lives, without the benefit of a competent credible fear hearing or any other of the processes and protections of the law due to him under the 5th and 14th Amendments to the Constitution of the United States.

41. Pursuant to the provision of 42 U.S.C., §1983 and 1985, Plaintiff sues to recover reasonable compensation for his and his son's injuries and damages caused by Defendants' deprivation of rights secured and guaranteed to father and son by the Constitution of the United States.

42. At all times material hereto, Defendants were acting under color of state and federal law, but no Defendant was a judicial officer.

43. **Qualified Immunity**. Defendants Sanchez and SWK assert a qualified immunity defense in their motion for judgment on the pleadings, which has been denied without prejudice to refiling by Order of this Court dated July 30, 2019 [Dct. 15]. In anticipation of another claim of qualified immunity, Plaintiff would show the Court that at all times material hereto father and son enjoyed and held clearly established rights to:

   a. Be free from assaults and batteries committed by any defendant, without the due process and equal protection of the law guaranteed to them by the 5th and 14th Amendments of the Constitution of the United States. regardless whether the assaults and batteries were committed in the actor's capacity as an individual, corporate representative, or governmental agent because they were acting under color of law;

   b. Be free from false imprisonment perpetrated by any defendant, without the due process and equal protection of the law guaranteed to them by the 5th and 14th Amendments of the Constitution of the United States. regardless whether the false imprisonments were committed in the actor's capacity as an individual, corporate representative, or governmental agent because they were acting under color of law;

   c. Be free from the intentional infliction of severe emotional distress committed by any defendant, without the due process and equal protection of the law guaranteed to them by the 5th and 14th Amendments of the Constitution of the United States, regardless whether the false imprisonments were committed in the actor's capacity as an individual, corporate representative, or governmental agent because they were acting under color of law;

   d. Be free from the deprivation of any rights guaranteed by the Constitution and laws of the United States, such deprivation being committed by any defendant, without the due process and equal

> protection of the law guaranteed to them by the 5th and 14th Amendments of the Constitution of the United States. regardless whether the deprivations were committed in the actor's capacity as an individual, corporate representative, or governmental agent because they were acting under color of law;

All of which rights were violated by Defendants in an objectively unreasonable manner in violation of clearly established law.

44. In American law, there is no immunity, sovereign, governmental, or otherwise from liability for a violation of Constitutional rights.

45. The conditions of F.C.B.'s confinement were not the result of mere episodic acts or omissions. They were intentionally and deliberately designed and implemented by Defendants.

46. Defendants are jointly and severally liable.

### F. Remedies & Damages

47. Plaintiff sues to recover reasonable compensation for his and his son's injuries and damages caused by Defendants' violations of law hereinabove alleged in amounts found by the jury, such elements of damage including:

    a. Physical pain and mental anguish, past and future;

    b. Severe emotional distress, past and future;

    c. Injury to earning capacity, past and future;

    d. Medical, hospital, drug, and counseling expense, past and future.

48. The **SWK** and **SHILOH** defendants acted with fraud, malice, and gross neglect as those terms are used in Chapter 41, Texas CIVIL PRACTICE & REMEDIES CODE. Pursuant to the provisions of Chapter 41 Plaintiff is entitled to recover and sues for an award of exemplary damages as found by the jury giving due consideration to:

(a)  the nature of the wrong;

(b)  the character of the conduct involved;

(c)  the degree of culpability of the wrongdoer;

(d)  the situation and sensibilities of the parties concerned;

(e)  the extent to which such conduct offends a public sense of justice and propriety; and

(f)  the net worth of the defendant.

49. Pursuant to 42 USC, §1988 (b), Plaintiff sues to recover his attorney fees, expert witness fees, and other taxable costs of court; prejudgment and post judgment interest as allowed by law.

### G. Jury Demand

42. Plaintiff demands a trial by jury as guaranteed to him and his son by the 7th Amendment to the Constitution of the United States.

### J. Prayer

43. Premises considered, Plaintiff prays that Defendants be cited to appear and answer herein the terms of the law, that upon final hearing he have judgment of and from defendants, jointly and severally for the full amount of his and his son's damages, actual and exemplary, statutory, and equitable remedies as found by the jury, costs, expert witness fees, attorney fees, prejudgment and post judgment interest, and for such other and further relief as the Court may deem proper.

Respectfully Submitted,



THE COMMISSIONERS HOUSE AT HERITAGE SQUARE
2901 Bee Cave Road, Box L
Austin, Texas 78746
Phone: (512) 328-9099
Facsimile No. (512) 328-4132

Email: jjudge@jkplaw.com
ATTORNEYS FOR PLAINTIFF

_____
John Judge
State bar no. 11044500

DE ANDA LAW FIRM, P.C
Ricardo de Anda, Texas State Bar No. 05689500
212 Flores Avenue
Laredo, Texas 78040
Phone: (512) 328-9099
Facsimile No. (512) 328-4132
Email: deandalaw@gmail.com
ATTORNEYS FOR PLAINTIFF

WINCKLER & HARVEY, LLP
4407 Bee Cave Road, Building 2, Suite 222
Jay Harvey, Texas State Bar No. 09179600
Austin, Texas 78746
Phone: (512) 306-1800
Facsimile No. (512) 593-7399
Email: jharvey@wincklerharvey.com
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

By my signature below, I hereby certify that on this 26th day of August 2019 the foregoing document was served by the Court's electronic filing system to the following counsel of record:

Wes Griggs, SBN 08489100
LAW OFFICES OF WES GRIGGS
301 South 17th Street
P.O. Box 517
West Columbia, Texas 77486
Tel: 979-345-5188
Fax: 979-345-4246
Email: service@wesgriggslaw.com
ATTORNEY FOR DEFENDANT, CLAY DEAN HILL

Wesson Tribble, SBN 20213960
TRIBBLE ROSS
6371 Richmond Avenue
Houston, Texas 77057
Tel: 713-622-0444
Fax: 713-622-0555
Email: wtribble@tribblelawfirm.com
ATTORNEY FOR DEFENDANT, SHILOH TREATMENT CENTER, INC.

TAYLOR ANDERSON, LLP
Floyd Hartley, Jr. SBN 798242
Sonia E. Johnson SBN 24002536
8150 N. Central Expressway, Suite 920
Dallas, Texas 75206
Tel: 214-445-5848
fhartley@talawfirm.com
sjohnson@talawfirm.com

*[signature]*

John Judge