## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **J.E.B.**, individually and as next friend to **F.C.B.**, | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| VS. | § | |
| | § | |
| **CLAY DEAN HILL**, individually and d/b/a **SHILOH TREATMENT CENTER, SHILOH TREATMENT CENTER, INC.; JUAN J. SANCHEZ**, individually and d/b/a, **SOUTHWEST KEY; AND SOUTHWEST KEY PROGRAMS, INC.**, | § | **CIVIL ACTION NO. 1:19-CV-444-LY** |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendant(s). | § | |

## DEFENDANTS JUAN J. SANCHEZ AND SOUTHWEST KEY PROGRAMS, INC.'S RULE 12(B)(6) MOTION TO DISMISS

Despite the Court's Order granting Plaintiffs leave to amend, their First Amended Complaint and Jury Demand (Doc. 19) fails to state a viable cause of action against Juan J. Sanchez or Southwest Key Programs, Inc. Instead, Plaintiffs' Amended Complaint continues to reveal that this case is about Plaintiffs' dispute with federal immigration policies and laws (*e.g.*, detention of asylum seekers, family separation policy, placement of unaccompanied minors) and incidents that allegedly occurred while F.C.B. was placed in a facility operated by co-defendants Clay Dean Hill and Shiloh Treatment Center. Taking Plaintiffs' Amended Complaint at face value, and liberally construing the few facts alleged therein, Plaintiffs' case is *not* about any improper conduct or action taken by Defendants Juan J. Sanchez ("Sanchez") or Southwest Key Programs, Inc. ("SWK") (collectively, the "SWK Defendants"). Therefore, SWK Defendants, by and through their counsel and pursuant to FED. R. CIV. P. 12(b)(6), respectfully move to dismiss all claims Plaintiffs assert against SWK Defendants in their entirety.

## I.      INTRODUCTION

Plaintiffs are father and son residents and citizens of Guatemala. Amended Complaint ¶ 2. Plaintiffs allege that in February of 2018, law enforcement authorities apprehended and took them into custody after then entered the United States in search of asylum. *Id*. at ¶¶ 14-15. After their apprehension, Plaintiffs allege that law enforcement authorities separated them, placing them in separate facilities. *Id*. at ¶ 15-16. After a relatively short period of detention, J.E.B., the father, was allegedly deported to Guatemala. *Id* at ¶ 15.  His son F.C.B., however, was detained for a longer period of time, with law enforcement authorities initially placing him at a facility operated by SWK while waiting for final adjudication of his immigration status. *Id*. at ¶ 16. F.C.B. was placed in the SWK facility from February to June of 2018. *Id*. at ¶¶ 15-17.

On June 21, 2018, F.C.B. was transferred to a facility that was operated by Co-Defendants Clay Dean Hill and the Shiloh Treatment Center ("Shiloh"). *Id*. ¶ 17. While at Shiloh, Plaintiffs contend F.C.B. was misdiagnosed, improperly treated with medication, and sexually assaulted by another child. *Id*. at ¶¶ 17-21, 27, 29-30. Based on F.C.B.'s detention and this alleged mistreatment, Plaintiffs now seek damages pursuant to common-law intentional tort claims – assault and battery, false imprisonment, and intentional infliction of emotional distress – as well as civil rights claims based on violations of state law. *Id*. ¶¶ 36-39.

Plaintiffs' Amended Complaint, however, is grossly insufficient, failing to allege specific facts as against the SWK Defendants of any acts or omissions giving rise to liability and failing to adequately support any of the alleged claims against the SWK Defendants. Although this Court specifically granted Plaintiffs leave to amend their Original Petition "so as to allow inclusion of facts and claims" against the SWK Defendants, they failed to do so. And this despite SWK's production of all of its records pertaining to the care and custody of F.C.B. Indeed, all of Plaintiffs' claims are facially inadequate under the pleading requirements outlined in *Iqbal* and *Twombly* and

should be dismissed. In addition to their failure to satisfy the *Iqbal/Twombly* pleading standard, Plaintiffs fail to state claims against the SWK Defendants related to the alleged physical and/or sexual abuse of F.C.B. because Plaintiffs do not even purport to suggest that any of the alleged physical or sexual abuse occurred at SWK's facility or that any of these tortious acts were committed by the SWK Defendants. Moreover, as discussed in more detail below, although Plaintiffs assert a false imprisonment claim, they fail to allege facts supporting an essential element of the claim – that the detention was unlawful and not within the scope of their pursuit of asylum in the United States.

Quickly perusing Plaintiffs' Amended Complaint readily demonstrates that, as to the SWK Defendants, it consists entirely of conclusory allegations that fail to articulate sufficient facts specifically supporting any claim against the SWK Defendants. Therefore, the Court should dismiss all claims against the SWK Defendants in their entirety under FED. R. CIV. P. 12(b)(6).

## II. ARGUMENTS AND AUTHORITIES

### A. Plaintiffs' Claims Against the Southwest Key Defendants Do Not Meet the Burden Of Pleadings Established Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007), quoting *Twombly*, 127 S. Ct. at 1974. To accomplish this, a plaintiff must plead sufficient facts and not only legal conclusions that, when viewed in the light most favorable to plaintiff, would raise a right to relief above the speculative level. *Id*. (emphasis added). To that end, in *Iqbal*, the Supreme Court observed that "only a complaint that states a plausible claim for relief survives a motion to dismiss," which is a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Of particular importance here, "threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements do not suffice." *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations or verbatim recitations of a cause of actions elements, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, dismissal is also proper where the complaint lacks factual allegations regarding a required element necessary to obtain relief. *See Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), cert. denied, 549 U.S. 825 (2006).

To be sure, although early, this matter is no longer in its infancy. The parties have exchanged written discovery, have agreed to a proposed scheduling order, and Plaintiffs had the benefit of receiving document production from both the SWK Defendants and co-defendant Shiloh before filing their Amended Complaint. That production included Shiloh records pertaining to F.C.B.'s care and treatment and all of the SWK Defendants' available records relating to the limited time F.C.B. was placed at the SWK facility. Nonetheless, Plaintiffs still offered no facts in their Amended Complaint that, if taken as true, would "raise a right to relief above the speculative level" against the SWK Defendants. *Twombly*, 127 S. Ct. at 1965.

In fact, the Amended Complaint only contains one paragraph that purports to link the SWK Defendants to any of Plaintiffs' claims:

> F.C.B. was held, first in the State of Arizona by the SWK defendants. He was abused both physically and emotionally. The abuse was so extreme and outrageous that on or about June 9, 2018, he was admitted to the Banner Thunderbird Medical Center at Glendale Arizona at risk of suicide. *Id*.

Beyond this vague and conclusory statement, none of the factual assertions describe acts that were committed by the SWK Defendants or conducted at its facility. Amended Complaint. ¶¶ 17-30. Under the pleading standards outlined by the United State Supreme Courts in *Iqbal* and *Twombly*, Plaintiffs' allegations against the SWK Defendants are clearly inadequate and cannot support a claim for which relief can be granted. *Twombly*, 550 U.S. at 556 (2007) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged"). *See also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—*but it has not 'show[n]'*—'that the pleader is entitled to relief") *quoting* Fed. R. Civ. P. 8(a)(2) (emphasis added).

> In *Twombly*, for example, the plaintiffs couched their ultimate allegations, in part, as follows:
>
> Beginning at least as early as February 6, 1996, and continuing to the present, the exact dates being unknown to Plaintiffs, Defendants and their coconspirators engaged in a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets by, among other things, agreeing not to compete with one another and to stifle attempts by others to compete with them and otherwise allocating customers and markets to one another in violation of Section 1 of the Sherman Act. *Id.* at 551 n.2.

There, the Court found that those allegations, without any additional facts, "comes up short" and that the mere inferences from those conclusions did not bring the pleading above a speculative level to make a claim for relief plausible on its face. *See Id.* at 564-66 (finding none of the alleged facts in the complaint "invests either the action or inaction" of a plausible conspiracy claim).

Here, Plaintiffs tee up an archetypal case for dismissal under *Iqbal/Twombly*. In their Amended Complaint, Plaintiffs fail to plead a single specific fact supporting their claims against the SWK Defendants. To the contrary, after again complaining about Sanchez's purported salary and former relationship to SWK, which is inapposite to any issue in the case, Plaintiffs merely assert broad, vague legal conclusions and generically recite the elements to the claims they assert. Amended Complaint. ¶¶ 36-39. That is not enough. At no point in the revised 51-paragrah Complaint do Plaintiffs ever provide any specific facts that support their claims or their legal conclusions. The who, what, when, where, and how of each of Plaintiffs' claims against SWK Defendants is wholly absent. This despite having received SWK's entire 694-page file on its care, custody, and treatment of F.C.B. while he was placed in its facility. Plaintiffs' failure to plead facts supporting any of their claims against the SWK Defendants or offer anything more than the inferential possibility of misconduct is fatal. The Court should dismiss all claims against the SWK Defendants.

**B.      Plaintiffs Fail to Plead Viable Intentional Tort Claims Against Defendants**

In addition to Plaintiffs' failure to satisfy the *Iqbal/Twombly* pleading standard, each of Plaintiffs' claims against the SWK Defendants also independently fail to state a claim against the SWK Defendants for which relief can be granted.

**1.      Assault and Battery**

Plaintiffs' first claim for relief is for the intentional torts of assault and battery. Petition at ¶ 37. The elements of a civil assault require showing a person (1) intentionally, knowingly, or recklessly caused bodily injury to another; (2) intentionally or knowingly threatened another with imminent bodily injury; or (3) intentionally or knowingly caused physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *See City of Waco v. Williams*, 209 S.W.3d 216, 223 (Tex. App.—Waco 2006). Likewise, a battery is established when a person (1) acts intending to cause a harmful or offensive contact with the person of the other and (2) a harmful contact with the person of the other directly or indirectly results. *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 556 (S.D. Tex. 2016). Plaintiffs fail to plead facts supporting any of the elements for assault or battery against the SWK Defendants.

According to Plaintiffs' well-pleaded facts, law enforcement authorities placed F.C.B. in a facility operated by SWK for approximately four months, from February of 2018 until June of 2018. *See* Amended Complaint ¶¶ 15-17. Critically, however, Plaintiffs do not allege that any physical or sexual abuse occurred at the SWK facility or by any SWK Defendants. In fact, as pled, it was not until after F.C.B. was transferred to the Shiloh facility in Texas that any alleged tortious conduct occurred. *Id.* at ¶¶ 17-30, 26-36. Thus, even when viewed in a light most favorable to Plaintiffs, before the June 21, 2018 transfer, there is no claim that F.C.B was improperly

medicated, sexually assaulted or otherwise harmed at the SWK facility. *Compare id*. at ¶ 24, *with Id*. at ¶¶ 16-19, 26-36.

Of particular importance here, in an assault and battery case, if the defendant establishes a lack of physical contact, then he/she successfully eliminates an essential element of the cause of action. *Preble v. Young,* 99 S.W.2d 153, 156 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (noting actual touching is a necessary element to assault and battery claims"); *see also Protho v. City of Garland*, 234 F.3d 706 (5th Cir. 2000) (holding that district court erred when it denied qualified immunity to three police officers for whom plaintiff never alleged "inappropriate physical contact occurred"). In the Amended Complaint, Plaintiffs have not alleged facts stating a claim to relief that is plausible on its face against the SWK Defendants. Besides the vague labels, conclusions, and a formulaic recitation of the elements of an assault and battery claim, Plaintiffs' allegations on their face do not go beyond mere speculation and certainly do not support a claim that F.C.B. had an apprehension of or experienced any tortious contact at any time during his placement at the SWK facility. *Twombly*, 550 U.S. at 555.

## 2.      False Imprisonment

Plaintiffs also assert an intentional tort claim for false imprisonment. Amended Complaint ¶ 37. False imprisonment in Texas is the direct restraint by one person of the physical liberty of another without adequate legal justification. *Big Town Nursing Home, Inc. v. Newman*, 461 S.W.2d 195 (Tex. Civ. App.—Waco 1970, no writ). The essential elements of false imprisonment are: (1) willful detention by the defendant; (2) without the consent of the plaintiff; and (3) without authority of law. *See Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). Plaintiffs, however, fail to allege a plausible false imprisonment claim against the SWK Defendants because they do not articulate any facts suggesting that SWK willfully detained F.C.B. or that F.C.B's

detention at the SWK facility was executed "without the authority of law." Plaintiffs' allegations, indeed, reveal precisely the contrary.

To be clear, Plaintiffs do not contend that they are citizens or residents of the United States. Amended Complaint ¶ 2. Rather, Plaintiffs are citizens of Guatemala who were apprehended and taken into custody by federal law enforcement officials while they were traveling to the United States in search of asylum. *Id*. at ¶¶ 2, 15. Importantly, "an officer acting with the authority of law does not commit false imprisonment." *Davila v. United States,* 713 F. 3d 248, 262 (5th Cir. 2013); *see also Wal–Mart Stores v. Resendez*, 962 S.W. 2d 539, 540 (Tex. 1998) ("In a false imprisonment case, if the alleged detention was performed with the authority of law, then no false imprisonment occurred"). Here, the Amended Complaint establishes that their detention was directly connected with their attempt to apply for asylum. Amended Complaint at ¶¶ 14-15. Thus, by its very nature, at the time of their apprehension, Plaintiffs lacked legal immigration status in the United States and, therefore, were fully subject to the federal immigration laws, regulations, and procedure for all similarly situated asylum applicants. That is, they were willfully detained by federal law enforcement authorities – not the SWK Defendants – and their detention was with legal authority.

Under Section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a), federal law enforcement officials have the sole discretion to grant asylum to any alien who is unable or unwilling to return to his or her country of origin because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A). Further, and critically, federal law enforcement officials also have the statutory and regulatory authority to detain any individual that arrives in the United States to seek asylum while that person awaits the final adjudication of his or her immigration status. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien ... shall be detained pending

a final determination of credible fear of persecution and, if found not to have such a fear, until removed"). *See, e.g., Jennings v. Rodriguez,* 138 S. Ct. 830, 842 (2018) (holding, *inter alia*, that the plain language within § 1225(b) regarding aliens seeking asylum mandates the detention of those individuals until immigration officers have finished "consider[ing]" the application for asylum or until removal proceedings have concluded). And F.C.B. remained in federal custody by reason of his immigration status at all times during his 4-month placement in SWK's facility. *See* 6 U.S.C. § 279(b).

At its core, Plaintiffs' false imprisonment claim does not allege anything more than what is authorized under federal law for all asylum applicants. At no point in the Amended Complaint do Plaintiffs offer any facts suggesting that F.C.B.'s placement at the SWK facility was an extrajudicial detention. Without more, the Amended Complaint simply does not state a plausible false imprisonment claim against the SWK Defendants. *Twombly*, 550 U.S. at 556. Indeed, the very fact that F.C.B. remained in federal custody during his placement at a SWK facility necessarily precludes the viable assertion of a false imprisonment claim against the SWK Defendants. *See Flores v. Reno*, Stipulated Settlement Agreement at ¶ 19, Case No. CV 85-4544-RJK(px) (C.D. Cal. Jan. 17, 1997) ("In any case in which the INS does not release a minor pursuant to Paragraph 14, the minor shall remain in INS legal custody. Except as provided in Paragraphs 12 or 21, such minor shall be placed temporarily in a licensed program. . . . All minors placed in such a licensed program remain in the legal custody of the INS."); *Reno v. Flores*, 507 U.S. 292, 298 (1993) ("Juveniles placed in these facilities are deemed to be in INS detention 'because of issues of payment and authorization of medical care.' 53 Fed. Reg. at 17449. 'Legal custody' rather than 'detention' more accurately describes the reality of the arrangement."). To the extent Plaintiffs seek to express displeasure with the manner their asylum claim was handled or, more broadly,

challenge U.S. federal immigration policy or the current administration's family separation policy, a false imprisonment claim against the SWK Defendants is wholly inappropriate, not viable, and should be dismissed. After all, according to the Supreme Court, the Flores Agreement, and federal law, while placed in the SWK facility, F.C.B. remained in the lawful custody of federal law enforcement authorities.

### 3.      Intentional Infliction of Emotional Distress

Plaintiffs also assert a vague claim for Intentional Infliction of Emotional Distress ("IIED"). Amended Complaint ¶ 38. To prevail on a claim for IIED, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004); *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62 (Tex. 1998). Plaintiffs' factual allegations, however, fail at every step.

In Texas, moreover, IIED claims are recognized as a "gap-filler" tort that was "never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). Accordingly, since IIED is a gap-filler tort, a plaintiff must not only establish the essential elements set forth above, but "must also establish that there are no alternative causes of action that would provide a remedy for the severe emotional distress caused by the defendant's conduct." *Kroger Tex., L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). If an IIED claim is based on another tort, a plaintiff cannot maintain an action for IIED "regardless of whether she chooses to assert the alternative claim, succeeds on the alternative claim, or the alternative claim is barred." *Tipping v. Martin*, No. 3:15-CV-2951-BN, 2015 WL 5999666, at *7 (N.D. Tex. Oct. 14, 2015) (*citing Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex.2004)). Thus, where the gravamen of an IIED claim is really another tort,

IIED should not be available since the availability of the other claims leaves no gap to fill. *Hoffmann–La Roche Inc.,* 144 S.W.3d at 447. *See, e.g., Moser v. Roberts*, 185 S.W.3d 912, 915– 16 (Tex. App. 2006) (dismissing an IIED cause of action because plaintiff's slander, libel, and malicious prosecution claims afforded plaintiff a remedy for any resulting emotional distress); *Bookman v. AIDS Arms, Inc*., No. 3:14-CV-814-B, 2014 WL 4968189, at *6 (N.D. Tex. Oct. 3, 2014) ("in light of the fact that the IIED claim is based on the same allegations as those offered in support of the sexual harassment claim, the Court finds the IIED claim invalid"); *Holguin v. Lopez*, 584 F. Supp. 2d 921, 928 (W.D. Tex. 2008) ("Because [plaintiff's] IIED claim against [defendant] is based on the same operative facts as his claims for constitutional violations, the Court finds that [plaintiff] cannot pursue his IIED claim as a matter of law).

Here, because Plaintiffs' IIED claim is solely based on the same conduct alleged and offered in support of the assault and battery and false imprisonment claims, it will not fill any gaps. Further, even when viewed in a light most favorable to Plaintiffs, the Amended Complaint does not sufficiently describe any conduct whatsoever by the SWK Defendants, much less "extreme and outrageous" behavior. According to Plaintiffs, F.C.B. was placed in the SWK facility from February to June 2018. Amended Complaint ¶¶ 15-17. This court is not required to conjure up any additional unpled allegations. *See Rios,* 444 F.3d at 421. During the time F.C.B. was at the SWK facility, Plaintiffs do not specifically allege any facts relating to purportedly intentional or reckless conduct, resulting emotional distress or that such hypothetical emotional distress was severe. Amended Complaint ¶¶ 15-17. The Amended Complaint simply does not support any allegation of extreme or outrageous behavior during F.C.B's four-month placement at the SWK facility. S*ee 'Umar v. Price*, No. 09-95-068CV, 1996 WL 4031, at *6 (Tex. App. Jan. 4, 1996) (finding Plaintiff

did not allege sufficient facts rising to the level of injury for which IIED existed even where plaintiff was incarcerated in a penal institution).

### 4.    Deprivation of Constitutional Rights

Lastly, Plaintiffs now also assert civil rights claims under 42 U.S.C. § 1983. Amended Complaint ¶¶ 39-42.  Importantly, a § 1983 claim can only be applied to individuals who act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. To state a viable claim for relief, a plaintiff must prove: (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under *color of state law*. *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). The under-color-of-state-law element of § 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). Any allegation that a defendant violated a plaintiff's constitutional rights in a § 1983 claim must be "fairly attributable to the State." *Atkins*, 487 U.S. at 48. *See also Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). It is only where the person acts to deprive another of his federal rights under color of state law that § 1983 provides authority for a federal claim. *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973).

Here, Plaintiffs fail to plead either state action or any violation of a constitutional right by a person acting under color of state law. To be sure, Plaintiffs broadly allege action "under color of law", but their pleadings demonstrate that the SWK Defendants were acting under color of federal law. And Plaintiffs have not brought a Bivens action or a suit under the Federal Tort Claims Act. Thus, it is readily apparent from the face of Plaintiffs' Amended Complaint that they have failed to plead a valid claim against the SWK Defendants under 42 U.S.C. § 1983.

C.    **Plaintiffs Fail to Plead a Plausible Claim Against Sanchez in his Individual Capacity**

1.    **Plaintiffs do not allege that Sanchez engaged in any tortious conduct**

Plaintiffs' ostensible claims against Sanchez in his individual capacity fail on their face. Other than identifying Sanchez as the former Chief Executive Officer of SWK and making assertions about his financial arrangement with SWK, Plaintiffs do not plead any facts even remotely demonstrating a plausible claim that Sanchez committed any of the alleged intentional torts. Plaintiffs do not, for example, allege that Sanchez had any role or involvement in the apprehension or placement of F.C.B. at the SWK facility. Nor do they allege that, while at the SWK facility, Sanchez monitored, counseled, treated, or had any contact with F.C.B. at any time. Plaintiffs do not plead any facts supporting any claim against Sanchez individually. Nor have Plaintiffs alleged any facts supporting a purported claim for a CEO's vicarious liability for the unspecified acts or omissions of unidentified employees of the entity.

2.    **Sanchez is entitled to qualified immunity for all claims asserted against him in his individual capacity**

In the alternative, the Court should find that Sanchez is entitled to qualified immunity for all claims asserted against him in his individual capacity. According to the Amended Complaint, SWK is a non-profit Texas corporation with business operations focused on holding foreign minors who have been detained and separated from their parents by governmental entities. Amended Complaint ¶¶ 6-7. That is, it is a facility in which federal authorities place alien minors while they are in federal custody by reason of their immigration status. *See, e.g.*, 6 U.S.C. § 279(b). From 1987 until March of 2019, Sanchez was the CEO of SWK. Petition at ¶ 6. As such, according to Plaintiffs' allegations, Sanchez was an agent of the federal government with respect to its placement of detained minors at the SWK facility, triggering his entitlement to qualified immunity.

As the Fifth Circuit has explained, "[q]ualified immunity serves to ensure government employees are not impeded from their public work to defend frivolous actions." *Porter v. Valdez*,

424 Fed. Appx. 382, 386 (5th Cir. 2011) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). *See also Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (holding Courts should resolve qualified immunity at the earliest possible stage of litigation and it should protect "all but the plainly incompetent or those who knowingly violate the law). Through qualified immunity, government officials conducting discretionary functions generally are shielded from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Accordingly, qualified-immunity analysis is based upon two, well-established prongs: (1) whether plaintiffs show violation of a clearly-established statutory or constitutional right; and, if so, (2) whether they show defendants' actions were 'objectively [un]reasonable in light of clearly established law.'" *Id*. (*quoting Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003)).

Once the qualified immunity affirmative defense is invoked, the burden shifts to the Plaintiff to rebut it. *See Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994). The plaintiff must plead specific facts with a level of particularity so that they would, if proved, warrant the relief sought. *Id. See also Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003) (*citing Reyez v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) ("[h]eightened pleading in qualified immunity cases requires that plaintiffs rest their complaint on more than conclusions alone and plead their case with precision and factual specificity"). In view of that, because Sanchez raises qualified immunity in the context of a Rule 12(b) motion, the Court's analysis is limited to the facts alleged in Plaintiffs' Amended Complaint. *See Nunez* at 386-87.

Here, again, the well-pleaded facts do not go beyond vague and conclusory statements to demonstrate a violation of any clearly-established constitutional or statutory right or any action by Sanchez that was objectively unreasonable in light of clearly established law. First, although

Plaintiffs allege false imprisonment, they concede that F.C.B. was only placed at the SWK facility after Plaintiffs were apprehended and taken into custody by law enforcement officials while traveling from Guatemala to the United States in search of asylum. *See* Amended Complaint ¶¶ 15-16. Thus, on its face, Plaintiffs' conclusory allegations do not suggest that Sanchez violated any clearly-established right by ostensibly participating in F.C.B.'s detention while he awaited the final adjudication of his immigration status.

Second, even if the Court were to proceed to the second step, Plaintiffs do not allege any facts that demonstrate any objectively unreasonable conduct by Sanchez. To succeed on this prong, Plaintiffs must allege facts sufficient to show that no reasonable officer could have viewed his actions as proper. *Porter*, 424 Fed. Appx. at 388. However, as noted above, Plaintiffs fail to allege *any* facts that demonstrate that Sanchez, as the CEO of SWK, personally committed any specific acts while F.C.B. was placed at the SWK facility.

Consequently, Plaintiffs' claims against Sanchez necessarily fail because they do not allege specific conduct that gives rise to a constitutional or statutory violation or objectively unreasonable conduct under any clearly established law. *See DeLeon v. City of Dallas*, 141 Fed. Appx. 258, 261 (5th Cir. 2005). Failing on each element, Plaintiffs cannot state a plausible claim against Sanchez to which he is not otherwise entitled to qualified immunity.

## D.    Plaintiff J.E.B. Fails to Plead Any Claims Against Defendants in his Individual Capacity.

The Court should dismiss all claims for relief asserted by Plaintiff J.E.B. in his individual capacity because the Amended Complaint does not contain any supporting factual or legal grounds. Each of the asserted claims – assault and battery, false imprisonment, intentional infliction of emotional distress and depravation of constitutional rights – relate to the alleged detention and treatment of F.C.B. *See* Amended Complaint ¶¶ 37-39. According to the Amended

Complaint, J.E.B. was taken into custody and deported to Guatemala in April of 2018. *Id*. at ¶¶ 15. No well-pleaded facts suggest any purported mistreatment of J.E.B. by SWK Defendants. Plaintiffs do not allege that SWK Defendants were involved in J.E.B.'s apprehension, his separation from F.C.B., his detention or his eventual deportation to Guatemala. He does not allege that he was ever detained at the SWK facility or that he had any physical contact with any SWK employee prior to his deportation. Even construing the facts in Plaintiffs' Original Petition broadly and accepting them as true for the purposes of the instant motion, nothing supports any claim by J.E.B. against SWK Defendants.

### E.  Plaintiffs' claims relating to improper administration of medication are barred.

Any and all claims relating to the improper administration of medication to F.C.B. while he was placed in a SWK facility are barred as a matter of law from being re-litigated in this forum. More than twenty years ago, the federal government entered into a settlement agreement with a class of litigants asserting various claims relating to the care, custody, and treatment of alien minors detained by federal law enforcement, the so-called Flores Agreement. *See Flores v. Reno*, Stipulated Settlement Agreement, Case No. CV 85-4544-RJK(px) (C.D. Cal. Jan. 17, 1997) ("Flores Agreement"). The express purpose of the Flores Settlement was to "set[] out nationwide policy for the detention, release, and treatment of minors in the custody of the INS." *See* Flores Agreement at ¶ 9.   The defendant parties to that agreement included the federal government and its "agents, employees, contractors and/or successors in office." *Id*. at ¶ 1. And the plaintiff class covered by the lawsuit and settlement constituted "All minors who are detained in the legal custody of the INS." Id. at ¶ 10. Plaintiffs' Amended Complaint establishes the manifest applicability of the Flores Agreement to the instant litigation in pleading facts that establish the SWK Defendants are contractors or agents of the federal government and that F.C.B. was a minor in the custody of

the federal government. Amended Complaint at ¶¶ 1, 6, 7, 15, 16. F.C.B. was a class member subject to the Flores Agreement.

The applicability of the Flores Agreement has important implications for Plaintiffs. Initially, SWK Defendants appreciate that minors, like F.C.B., who are class members may undoubtedly challenge their placement determinations or allege noncompliance with the standards set forth in the Flores Agreement. Flores Agreement at ¶ 24.B. But in asserting their claims here, Plaintiffs ignore the fact that – while F.C.B. was detained – the Flores class challenged the alleged improper or unauthorized administration of medication to detained minors last year. Specifically, in April of 2018, while F.C.B. was placed in a SWK facility, the Flores class of which F.C.B. was a part argued that the government was in breach of the Flores Agreement by, among other things, "administering psychotropic drugs to Class Members without first obtaining a court order or the informed consent of a person authorized by state law to approve such decisions." *See Flores v. Sessions*, Order re Plaintiffs' Motion to Enforce Class Action Settlement at 1, CV 85-4544-DMG (AGRx) (C.D. Cal. July 30, 2018) (Doc. 470). More to the point, the Class of which F.C.B. was a member "claim[ed] that ORR has violated Texas law by forcing Class Members at Shiloh RTC to take psychotropic medication without first obtaining a court order or the informed written consent of a person authorized by state law to provide such consent." *Id*. at 20. Ruling on the claim while F.C.B. was placed at Shiloh, the Court found violations of the Flores Agreement:

> For the reasons discussed in this section, the Court finds that Defendants have breached Paragraphs 6 and 9 and Exhibit 1 of the Flores Agreement in the course of administering psychotropic medications at Shiloh RTC. The Court ORDERS Defendants to comply with all Texas child welfare laws and regulations governing the administration of psychotropic drugs to Class Members at Shiloh RTC. Most importantly, Defendants shall do the following before administering any psychotropic medication to a Class Member at Shiloh RTC: (1) provide the disclosure required by 26 Texas Administrative Code section 748.2253 to a "person legally authorized to give medical consent" as that term is defined in 26 Texas Administrative Code section 748.43(47), and (2) obtain the written consent of that

person in accordance with 26 Texas Administrative Code sections 748.2001 and 748.2253. If Defendants are not able to obtain such informed written consent, then they may not administer the psychotropic medication to the Class Member unless they obtain a court order authorizing them to do so under Texas law or there is an "emergency" as that term is defined in Texas Family Code section 266.009 and 26 Texas Administrative Code section 748.2257. If Defendants administer psychotropic medication on an emergency basis, then Defendants shall adhere to all of the notification and documentation requirements imposed by Texas Family Code section 266.009 and 26 Texas Administrative Code section 748.2257.

*Id*. at 23-24. That is, while F.C.B. was placed at a SWK facility, his Class raised certain complaints concerning treatment of Class members, including some relating to the administration of psychotropic medication, and while he was placed at Shiloh, Judge Gee issued her ruling addressing those complaints. The same complaints Plaintiffs now voice with respect to the administration of psychotropic medication.

Although not dispositive of all claims asserted at bar, Plaintiffs certainly cannot re-litigate those claims already raised and adjudicated under the auspices of the ongoing Flores litigation relating to purported violations of the Flores Agreement. *See, e.g., Lucas R. v. Azar*, 2018 WL 7200716 at *6-7 (C.D. Cal. Dec. 27, 2018). To the extent Plaintiffs contend Shiloh failed to comply with Judge Gee's Order, they should take that matter up in that Court. But claims relating to the administration of medication are not subject to re-litigation here and, in any event, not as to the SWK Defendants. The Court should, accordingly, dismiss all such claims at bar against SWK Defendants relating to alleged improper administration of medication.

### III. CONCLUSION AND PRAYER

Apparently aggrieved by federal immigration policies and laws, Plaintiffs' claims against the SWK Defendants are misplaced. Indeed, such claims are manifestly improper because imposing liability on the SWK Defendants, a federal government contractor, for state law torts would frustrate federal legislation and would conflict with federal policies and interests. *See, e.g., Boyle v. United Technologies Corp.*, 487 U.S. 500, 507 (1988). And, importantly, Plaintiffs'

Amended Complaint independently fails to state a viable claim for relief as against the SWK Defendants. Therefore, the Court should grant this motion and dismiss all claims against Defendants Juan J. Sanchez and Southwest Key Programs, Inc.

Respectfully submitted,

**TAYLOR|ANDERSON, LLP**

BY:    _/s/ Floyd R. Hartley, Jr._____
**Kevin S. Taylor**
*Pro Hac Vice*
ktaylor@talawfirm.com

**Floyd R. Hartley, Jr.**
State Bar No.: 00798242
fhartley@talawfirm.com

**Valentine Uduebor**
*Pro Hac Vice*
vuduebor@talawfirm.com

1670 Broadway, Suite 900
Denver, Colorado 80202
TEL: (303) 551-6660
FAX: (303) 551-6655

ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

On the 16th day of September, 2019, I served all counsel of record electronically or by

another manner authorized by FEDERAL RULE OF CIVIL PROCEDURE 5(b)(2).

**_VIA E-SERVICE & EMAIL:_**
John Judge
Judge, Kostura & Putman, P.C.
2901 Bee Cave Road, Box L
Austin, Texas 78746
jjudge@jkplaw.com

*Attorney for Plaintiffs*

**_VIA E-SERVICE & EMAIL:_**
Jay Harvey
Winckler & Harvey, LLP
4407 Bee Cave Road, Building 2, Suite 222
Austin, Texas 78746
jharvey@wincklerharvey.com

*Attorney for Plaintiff*

**_VIA E-SERVICE & EMAIL:_**
Wesson H. Tribble
6371 Richmond Ave
Houston, TX 77057
wtribble@tribblelawfirm.com

*Attorney for Shiloh Treatment Center, Inc.*

**_VIA E-SERVICE & EMAIL:_**
Ricardo de Anda
De Anda Law Frim, P.C.
212 Flores Avenue
Laredo, Texas 78040
deandalaw@gmail.com

*Attorney for Plaintiffs*

**_VIA E-SERVICE & EMAIL:_**
Wes Griggs
Law Office of Wes Griggs
301 South 17th Street
P.O. Box 517
West Columbia, Texas 77486
service@wesgriggslaw.com

*Attorney for Clay Dean Hill*

      /s/ Floyd R. Hartley, Jr.
         **Floyd R. Hartley, Jr.**